299 So.2d 657 (1974)
The CITY OF APOPKA, Florida, et al., Appellants,
v.
ORANGE COUNTY, a Political Subdivision of the State of Florida, and Clarcona Improvement Association, Appellees.
No. 73-273.
District Court of Appeal of Florida, Fourth District.
February 22, 1974.
On Rehearing April 11, 1974.
William G. Mitchell, of Giles, Hedrick & Robinson, Orlando, for appellants.
*658 Steven R. Bechtel, of Mateer & Harbert, Orlando, for appellee Orange County.
Carter A. Bradford, of Bradford, Oswald, Tharp & Fletcher, Orlando, for appellee Clarcona Improvement Assn.
DOWNEY, Judge.
This is an appeal by the cities of Apopka, Ocoee, and Winter Garden and the Tri-City Airport Authority from a final judgment of the circuit court denying their petition for certiorari which sought review of an order denying appellants' application for a special exception. This is a companion appeal to those consolidated appeals numbered 72-1204 and 72-1209, 299 So.2d 652.
The appellant cities formed the appellant Tri-City Airport Authority pursuant to Chapter 332, F.S. 1971, F.S.A., commonly known as The Airport Law of 1945, for the purpose of building an airport to serve the three cities and the surrounding area. Appropriate engineering studies were made and various sites for the proposed airport were considered. Finally, the Authority determined that a parcel of property located in Orange County outside any municipality and zoned A-1 was the most suitable site for the proposed airport. The Authority thereafter obtained options to buy that property. Orange County's zoning legislation permits construction and operation of "airplane landing fields and helicopter ports with accessory facilities for private or public use" in an A-1 district as a special exception. Thus, the three cities and the Authority filed an application for a special exception with the Orange County Zoning Board of Adjustment to build their proposed airport. Without entering any finding of fact, the Zoning Board of Adjustment denied the application on the ground that granting it "would be adverse to the general public interest." On appeal to the Board of County Commissioners a de novo hearing was held with the following result:
"A motion was made by Commissioner Pickett, seconded by Commissioner Poe, and carried, that the decision of the Board of Zoning Adjustment on December 2, 1971 denying application No. 2 for a Special Exception in an A-1 District for the construction of a proposed Tri-City Airport be affirmed and upheld on the grounds that the granting of the proposed Special Exception would adversely affect the general public and would be detrimental to the public health, safety, comfort, order, convenience, prosperity and general welfare and, therefore, not in accordance with the Comprehensive Zoning Plan of Orange County."
Appellants then filed a petition for a writ of certiorari in the circuit court in accordance with the provisions of the Orange County Zoning Act, Chapter 63-1716, Laws of Florida, as amended, to obtain review of the foregoing decision of the Board of County Commissioners. While the petition for certiorari was pending appellants filed another action in the Circuit Court of Orange County. The new action sought a declaration that implementation of Chapter 332, F.S. 1971, F.S.A., by the appellants constituted a governmental function thereby exempting appellants from the operation of Orange County zoning regulations.
In order to determine whether there was substantial competent evidence to support the decision below we must of necessity resort to the evidence introduced at the hearing before the Board of County Commissioners. The appellants adduced evidence from (a) the Tri-City Airport Authority consulting engineer, (b) a representative of the Federal Aviation Agency, (c) and a representative of the Florida Department of Transportation, Mass Transit Division. Their testimony showed that there was a definite public need for the airport; that serious in depth studies had been made to determine the most appropropriate location for the airport; that the location in question was the best available considering such factors as (1) convenience to users, (2) land and area requirements, (3) general *659 topography, (4) "compatability with existing land use, plans and land users", (5) land costs, (6) air space and objections, (7) availability of utilities, (8) noise problems, (9) bird habitats and other ecological problems. The mayors of the three municipalities and the members of the Airport Authority also demonstrated that the selection of the site in question resulted from long study and competent advice on the subject. Approval had been received from every interested government agency including the Federal Aviation Administration, the Florida Department of Transportation, and the Florida Department of Air and Water Pollution Control.
The evidence upon which the Board of County Commissioners relied to deny appellants' application came from one abutting owner, Richard Byrd; several other owners within a two to five mile radius of the proposed airport site; a petition signed by some two hundred members of the Clarcona Improvement Association; and approximately thirty-five people in attendance at the hearing who objected but did not testify. Byrd's testimony was mainly directed to his opinion of what the airport would do to construction costs in the area and his opinion of what would happen to zoning in the area as a result of the proposed use. It also developed that Byrd is interested in buying the property proposed to be used as the airport. Several other property owners speculated about what would happen to the area's zoning, complained about the anticipated noise, and generally wanted to keep the status quo in the area. One witness who admitted he was a layman with no special training or experience advised the Board about his opinion of the damage to the Florida aquifer which would result from the proposed airport.
Although notice to and hearing of the proponents and opponents of an application for a special exception or other zoning change are essential and all interested parties should be given a full and fair opportunity to express their views, it was not the function of the Board of County Commissioners to hold a plebiscite on the application for the special exception. Rockville Fuel and Feed Co. v. Board of Appeals, 257 Md. 183, 262 A.2d 499, 504 (1970). As pointed out by Professor Anderson in Volume 3 of his work, American Law of Zoning, § 15.27, pp. 155-156:
"It does not follow, ... that either the legislative or the quasi-judicial functions of zoning should be controlled or even unduly influenced by opinions and desires expressed by interested persons at public hearings. Commenting upon the role of the public hearing in the processing of permit applications, the Supreme Court of Rhode Island said:
`Public notice of the hearing of an application for exception ... is not given for the purpose of polling the neighborhood on the question involved, but to give interested persons an opportunity to present facts from which the board may determine whether the particular provision of the ordinance, as applied to the applicant's property, is reasonably necessary for the protection of ... public health... . The board should base their determination upon facts which they find to have been established, instead of upon the wishes of persons who appear for or against the granting of the application.'
The objections of a large number of residents of the affected neighborhood are not a sound basis for the denial of a permit. The quasi-judicial function of a board of adjustment must be exercised on the basis of the facts adduced; numerous objections by adjoining landowners may not properly be given even a cumulative effect. While the facts disclosed by objecting neighbors should be considered, the courts have said that:
`A mere poll of the neighboring landowners does not serve to assist the board in determining whether the exception *660 applied for is consistent with the public convenience or welfare or whether it will tend to devaluate the neighboring property.'"
(Footnotes omitted.)
Instead the Board's purpose was to make findings as to how construction and operation of the proposed airport would affect the public and base its granting or denial of the special exception on those findings. Cf. Laney v. Holbrook, 150 Fla. 622, 8 So.2d 465, 146 A.L.R. 202 (1942); Veasey v. Board of Public Instruction, Fla.App. 1971, 247 So.2d 80.
The evidence in opposition to the request for exception was in the main laymen's opinions unsubstantiated by any competent facts. Witnesses were not sworn and cross examination was specifically prohibited. Although the Orange County Zoning Act requires the Board of County Commissioners to make a finding that the granting of the special exception shall not adversely affect the public interest, the Board made no finding of facts bearing on the question of the effect the proposed airport would have on the public interest; it simply stated as a conclusion that the exception would adversely affect the public interest. Accordingly, we find it impossible to conclude that on an issue as important as the one before the board, there was substantial competent evidence to conclude that the public interest would be adversely affected by granting the appellants the special exception they had applied for.
The judgment appealed from is therefore reversed and remanded to the circuit court with directions to grant the writ of certiorari and to remand the cause to the board of county commissioners for another de novo hearing on the application for special exception.
If the decision of the board is deemed to be arbitrary or unreasonable the aggrieved party will then have the option of a judicial review by certiorari pursuant to Florida Appellate Rules or a trial de novo in the circuit court pursuant to the Rules of Civil Procedure. Section 163.250 F.S. 1971, F.S.A.
Reversed and remanded with directions.
WALDEN and MAGER, JJ., concur.

ON PETITIONS FOR REHEARING.
PER CURIAM.
On petitions for rehearing the parties have advised this court that Orange County has not taken formal suitable action declaring its election to proceed under the provisions of Part II of the act entitled County and Municipal Planning For Future Development (163.160-163.315, F.S. 1971, F.S.A.). Accordingly, the petitions for rehearing filed by the parties are granted and we recede from all references in our opinion of February 22, 1974, to the availability of Section 163.250, F.S. 1971, F.S.A., in this case.
We maintain the view however, that the judgment appealed from should be reversed with directions to grant the writ of certiorari and to remand the cause to the board of county commissioners for another de novo hearing on the application for a special exception, at which time said board will have the opportunity to apply the balance-of-interests test to the evidence adduced before it. Thereafter, any aggrieved party may have that decision reviewed by the circuit court on petition for certiorari pursuant to the provisions of Chapter 63-1716, Special Acts of Florida, as amended.
WALDEN, MAGER and DOWNEY, JJ., concur.